WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Sunny Singh

*Attorneys for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,<br><br>                              Debtors. | Chapter 11<br>Case No. 15-23007 (RDD)<br><br>(Jointly Administered) |
| INVESTMENT RECOVERY GROUP, LLC<br><br>                              Plaintiffs,<br><br>v.<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al*.<br><br>                              Defendants. | Adv. Proc. No. 19-08715 |

**DEBTORS' SUPPLEMENTAL SUBMISSION ON THE ISSUE OF ANTICIPATORY BREACH IN SUPPORT OF DEBTORS' MOTION TO DISMISS THE ADVERSARY COMPLAINT AND OPPOSITION TO THE EMERGENCY MOTION OF IRG FOR A <u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

    I.   There Has Not Been An Anticipatory Breach .................................................................... 4

        A.      The Complaint Does Not Allege Anticipatory Breach ........................................... 5

        B.      There Cannot Be Anticipatory Breach Because the Dispute Is Not Ripe ............... 6

        C.      The Requirements for Anticipatory Breach Have Not Been Met ........................... 7

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*124 Elmwood, LLC v. Elmwood Vill. Charter Sch.*,
  28 Misc.3d 1205(A), 957 N.Y.S.2d 637 (Sup. Ct. Erie Cnty. 2010) ........................................8

*2 Tudor City Place Assocs. v. 2 Tudor City Tenants Corp.*,
  924 F.2d 1247 (2d Cir. 1991)..................................................................................................10

*Anchor Sav. Bank, FSB v. Peerless Fed. Sav. & Loan Ass'n*,
  1990 WL 34686 (E.D.N.Y. Mar. 20, 1990) ..........................................................................5, 8

*Aniero Concrete Co. v. N.Y. City Constr. Auth.*,
  1997 WL 3268 (S.D.N.Y. Jan. 3, 1997)....................................................................................5

*Argonaut P'ship, L.P. v. Sidek, S.A. de C.V.*,
  1996 WL 617335 (S.D.N.Y. Oct. 25, 1996),
  *aff'd*, 141 F.3d 1151 (2d Cir. 1998) .........................................................................................4

*In re Asia Glob. Crossing, Ltd.*,
  326 B.R. 240 (Bankr. S.D.N.Y.),
  *adhered to in part on reorg.*, 332 B.R. 520 (Bankr. S.D.N.Y. 2005) .......................................4

*Belin v. Weissler*,
  1998 WL 391114 (S.D.N.Y. July 14, 1998) ...........................................................................10

*Bona v. Barasch*,
  2003 WL 21222531 (S.D.N.Y. May 27, 2003)................................................................10, 11

*Brunswick Corp. v. Waxman*,
  459 F. Supp. 1222 (E.D.N.Y. 1978), *aff'd*, 599 F.2d 34 (2d Cir. 1979).................................12

*Brunswick Corp. v. Waxman*,
  599 F.2d 34 (2d Cir. 1979).......................................................................................................12

*Chelsea Grand LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO*,
  2017 WL 1102699 (S.D.N.Y. Mar. 23, 2017),
  *aff'd*, 729 F. App'x 33 (2d Cir. 2018)......................................................................................7

*De Lorenzo v. Bac Agency, Inc.*,
  256 A.D.2d 906, 681 N.Y.S.2d 846 (3d Dep't 1998) ..............................................................4

*Drewitz v. Motorwerks, Inc.*,
  2010 WL 1541436 (Minn. Ct. App. Apr. 20, 2010) .................................................................8

*In re Econ. Lodging Sys., Inc.*,
  226 B.R. 840 (Bankr. N.D. Ohio 1998),
  *aff'd*, 234 B.R. 691 (B.A.P. 6th Cir. 1999) ................................................................ 15

*Favour Mind Ltd. v. Pacific Shores, Inc.*,
  2004 WL 97649 (S.D.N.Y. Jan. 20, 2004) .................................................................. 12

*Geden Operations Ltd. v. Dry Bulk Handy Holdings Inc. M/V "Bulk Uruguay"*
  [2014] EWHC 885 (Comm), [2014] 2 Lloyd's Rep 66, 2014 WL 1097142
  (Eng. 28 Mar. 2014), Popplewell J. .............................................................................. 5

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
  748 F.2d 729 (2d Cir. 1984) .......................................................................................... 9

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
  108 F.3d 1531 (2d Cir. 1997) ........................................................................................ 9

*Lucente v. Int'l Bus. Machs. Corp.*,
  310 F.3d 243 (2d Cir. 2002) .......................................................................................... 6

*Pac. Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.*,
  411 F.2d 889 (9th Cir. 1969) ....................................................................................... 10

*In re Signature Apparel Grp. LLC*,
  577 B.R. 54 (Bankr. S.D.N.Y. 2017) ............................................................................. 4

*Vision Entm't Worldwide, LLC v. Mary Jane Prods., Inc.*,
  2014 WL 5369776 (S.D.N.Y. Oct. 17, 2014) ................................................................ 6

**Statutes**

11 U.S.C. § 327(a) ............................................................................................................ 14

11 U.S.C. § 328(a) ........................................................................................... 1, 2, 9, 13, 14

11 U.S.C. § 330 ................................................................................................................. 14

**Other Authorities**

David S. Kupetz, *The Bankruptcy Code Is Part of Every Contract: Minimizing the
  Impact of Chapter 11 on the Non-Debtor's Bargain,* 54 Bus. Law. 55 (1998) ....... 10,

*Restatement (Second) Of Contracts* § 250 (1981) ............................................................. 4

A. Rosett, *Partial, Qualified, and Equivocal Repudiation of Contract*, 81 Colum.
  L. Rev. 93 (1981) .......................................................................................................... 8

**PRELIMINARY STATEMENT**

1. The adversary complaint filed by Investment Recovery Group, Inc. ("IRG") does not allege that The Great Atlantic & Pacific Tea Company, Inc. ("A&P" or the "Company" and with its affiliates, collectively, the "Debtors") anticipatorily breached the agreement between IRG and the Debtors. This was not an accident or an oversight. It cannot be properly alleged given the following undisputed facts:

- At the time the parties entered into the IRG retention agreement (the "Contract"), the parties knew that the Debtors were in chapter 11.

- At the time the parties entered into the Contract, it was also publicly known that there were Court Orders granting liens to the Secured Lenders and limiting the use of cash collateral that may prevent certain payments to IRG absent the Secured Lenders' consent. Those liens had the same effect on the Contract at the time it was signed as today. The Debtors did not hide and could not have hidden the existence of these liens from IRG and its experienced bankruptcy counsel because they were publicly disclosed in this bankruptcy case.

- IRG consented to becoming an ordinary course professional ("OCP") in the Debtors' bankruptcy and did not seek protection from existing Court Orders by being retained under Section 328(a) of the Bankruptcy Code.

- The Debtors have not taken any action after the Contract was signed to breach or threaten to breach the Contract.

Based on these undisputed facts and as discussed further below, a claim for anticipatory breach cannot be sustained.

2. This Court's question to counsel for IRG during oral argument framed a key problem with an anticipatory breach theory here:

> [T]here's no doubt that IRG's in substantial risk of not getting paid, whatever I would allow under Section 330. There's a -- without the -- there's substantial doubt whether that will happen without the consent of the secured lenders. On the other hand, this agreement was entered into on September 7, 2019. At that time, based on the public record of this case, that doubt existed. It stays.

1

> That same doubt. So, to say that A&P is in anticipatory breach today of the agreement and not to say that the parties knew that when they entered into the agreement in the first place, kind of begs the question as to whether there's an anticipatory breach. I mean, if you know someone's going to be in anticipatory breach on September 7, 2019 or should have known, how is that different than saying they're in anticipatory breach now? I mean, it must be that you knew it then, so how could it be a material breach now?

Feb. 11, 2020 Hearing Tr. at 26:15-27:6.

3.  IRG's response that it did not actually "know" of this Court's orders or the existence of the liens is of no moment. Here, IRG, as an experienced bankruptcy professional, who was represented by experienced bankruptcy counsel, should have known of this Court's orders and the existence of these liens at the time it executed the Contract. As the Court even queried, "maybe IRG had an obligation to check the docket." (*Id.* at 30:20). Indeed, in other similar circumstances, IRG has been retained under section 328(a) of the Bankruptcy Code or another arrangement that does not require Court approval of its fees. (*See* Debtors' Mot. at 2 n.3 (ECF No. 16)). Neither the Debtors' circumstances nor their relationship with IRG have changed from when the Debtors entered into the Contract with IRG and IRG willingly became an OCP. Accordingly, IRG is precluded from asserting an anticipatory breach claim now.

4.  In addition, any claim for anticipatory breach fails for other independent reasons. First, any claim for anticipatory breach is not yet ripe. As discussed in the Debtors' Motion, it is unclear if IRG will be entitled to any fee whatsoever. A fee dispute will only arise if the Debtors are provided information sufficient to file an amended tax return for a refund; if there is a determination by a federal taxing authority that the Company is entitled a refund for those Identified Potential Tax Assets; if the fee is calculated under the Contract; if this Court allows a fee above $250,000; and if the Secured Lenders do not agree to the amount of a fee or a settlement is not reached.

2

5.  In essence, IRG seeks an advisory ruling from this Court on its ability to collect a fee over $250,000 should such fee ever become payable (and allowed by the Court) under the Contract before it is ripe so it can then determine whether it should abide by the Contract and perform the services it promised to provide. If there is no tax refund or IRG's fee is $250,000 or less, there is no issue to litigate. *See* DeVito Decl. ¶ 17 (ECF No. 18). Uncertainty whether the Debtors have the ability to pay a purely hypothetical fee based on contingent circumstances is not an anticipatory breach.

6.  Moreover, until the size of the fee is known, it is pure speculation whether the Secured Lenders will consent to it. The Secured Lenders have communicated that they are prepared to negotiate a fee above the $250,000 for the OCP provided for in this Court's order authorizing the Debtors to employ ordinary course professionals (the "OCP Order") if IRG's fee should exceed $250,000. Under those circumstances, a dispute cannot possibly be ripe until the fee is known, it is above $250,000, and the consent of or agreement with the Secured Lenders cannot be obtained.

7.  Second, it cannot be an anticipatory breach of the Contract for the Debtors to adhere to this Court's orders—all of which were publicly available on September 7, 2019, when the Debtors and IRG signed the Contract.

8.  Third, the standard for anticipatory breach has not been met. The Debtors have not made a "positive and unequivocal" statement that they will not perform under the Contract. To the contrary, the parties are acting as if the Contract is in full force and effect, and the Debtors intend to abide by it. At most, there is uncertainty as to whether a large fee can be paid unless the Secured Lenders consent. That is not an anticipatory breach. Nor have the Debtors committed an "affirmative act" which makes the Debtors unable to perform. As noted above, the

3

Debtors have done nothing to inhibit performance of the Contract—the Secured Lenders' liens existed at the time of signing and today.

9. Finally, the Complaint fails to state a claim for which relief can be granted for all of the reasons set forth in the Debtors' original motion to dismiss. Accordingly, this Court should deny IRG's motion for a preliminary injunction and dismiss the Complaint in its entirety.

## ARGUMENT

### I. There Has Not Been An Anticipatory Breach

10. "An anticipatory repudiation occurs when a party to a contract (1) states that he cannot or will not perform his obligations, or (2) commits a voluntary affirmative act that renders the obligor unable or apparently unable to perform his obligations." *In re Asia Glob. Crossing, Ltd.*, 326 B.R. 240, 249 (Bankr. S.D.N.Y.), *adhered to in part on rearg.*, 332 B.R. 520 (Bankr. S.D.N.Y. 2005) (citations omitted); *see also De Lorenzo v. Bac Agency, Inc.*, 256 A.D.2d 906, 907-08, 681 N.Y.S.2d 846, 848 (3d Dep't 1998) (anticipatory repudiation requires "a renunciation of the contract in which the repudiating party has indicated an unqualified and clear refusal to perform with respect to the entire contract"); *Restatement (Second) Of Contracts* § 250 (1981) ("A repudiation is (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach under § 243, or (b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.").

11. With respect to the first prong of anticipatory repudiation—a statement that one party to the contract "cannot or will not perform his obligations"—the statement "not to perform [must be] *positive and unequivocal*." *In re Signature Apparel Grp. LLC*, 577 B.R. 54, 111 (Bankr. S.D.N.Y. 2017) (alteration in original) (emphasis added) (internal quotation mark omitted) (quoting *Argonaut P'ship, L.P. v. Sidek, S.A. de C.V.*, 1996 WL 617335, at *5

4

(S.D.N.Y. Oct. 25, 1996), *aff'd*, 141 F.3d 1151 (2d Cir. 1998)). Merely expressing a negative attitude toward the contract or indicating that more negotiations are necessary does not indicate that a contract should be considered to be repudiated anticipatorily. *See Anchor Sav. Bank, FSB v. Peerless Fed. Sav. & Loan Ass'n*, 1990 WL 34686, at *3 (E.D.N.Y. Mar. 20, 1990) ("Mere expression of doubt as to the willingness or ability to perform does not constitute a repudiation.").

12. The second prong of the anticipatory breach standard—an affirmative act that renders the obligor unable to perform his obligations—requires that performance be rendered impossible, not just unlikely or difficult. *See Aniero Concrete Co. v. N.Y. City Constr. Auth.*, 1997 WL 3268, at *18 (S.D.N.Y. Jan. 3, 1997) (finding no anticipatory breach where performance under the contract was still possible).[1]

### A. The Complaint Does Not Allege Anticipatory Breach

13. As a threshold matter, there is no claim of breach of contract or anticipatory breach alleged in the Complaint. Moreover, there are no allegations in IRG's Complaint that would support such a claim. Thus, there is no underlying cause of action that permits any extraordinary equitable and declaratory relief based on an anticipatory breach.

14. IRG's failure to even plead an anticipatory breach appears intentional, conceding that it cannot assert such a claim. Even if the Complaint did allege an anticipatory breach, IRG could not seek the relief it does in its Complaint. Under New York law, IRG has two mutually exclusive options for resolving an anticipatory breach: "[IRG] may (a) elect to treat the

---

[1] A foreign court has applied these same principles of anticipatory repudiation to hold that a party whose performance is contingent on a third party's performance or consent is not an anticipatory breach. *See Geden Operations Ltd. v. Dry Bulk Handy Holdings Inc M/V "Bulk Uruguay"* [2014] EWHC 885 (Comm), [2014] 2 Lloyd's Rep 66, 2014 WL 1097142 (Eng. 28 Mar. 2014), Popplewell J.

5

repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or (b) [it] may continue to treat the contract as valid and await the designated time for performance before bringing suit." *Vision Entm't Worldwide, LLC v. Mary Jane Prods., Inc.*, 2014 WL 5369776, at *4 (S.D.N.Y. Oct. 17, 2014) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258-59 (2d Cir. 2002)). IRG is not seeking, and cannot seek, to terminate the Contract and recover damages on the basis of an anticipatory breach by the Debtors. Indeed, the inability of IRG to claim damages at this point—because it does not know the amount of any fee—highlights that a determination of anticipatory breach is not appropriate. Nor is IRG choosing to treat the Contract as valid and awaiting the designated time for the Debtors' performance before bringing suit.

### B. There Cannot Be Anticipatory Breach Because the Dispute Is Not Ripe

15. The determination of whether there is an anticipatory breach is not ripe. There are still a number of steps that need to be taken before the parties will know whether IRG will be entitled to even receive a fee and the amount of any such fee:

- IRG must first complete its work to ascertain the Debtors' total tax assets for which they can claim a tax refund;

- The Debtors must agree with the IRG analysis and then amend their tax returns seeking the refunds that IRG has identified;

- Taxing authorities must approve the amended tax returns, and then issue a refund to the Debtors;

- Depending on the amount of refund obtained, if any, IRG would seek a fee from the Debtors pursuant to the terms of the Contract;

- If IRG's proposed fee exceeds $250,000, the Court would need to determine a reasonable fee; and then

- If IRG's fee as determined by the Court exceeds $250,000, the Secured Lenders would have to object and not agree to settle the matter.

6

16. As these steps illustrate, there are still a number of wholly contingent events that need to occur before any liability of the Company will even arise under the Contract. It is possible that there will not be any refund accepted by taxing authorities and no fee to be paid to IRG. It is also possible that the fee earned and approved by the Court will be less than $250,000—and there would be no dispute as to its payment under the OCP Order. Even if a fee is calculated and the Court approves a fee above $250,000, the Secured Lenders may well consent to the Company's payment of that fee depending on the amount.

17. IRG attempts to base its assertion of an anticipatory breach on a purely hypothetical fee that has neither arisen nor yet been earned—and may never arise or be earned. This does not give rise to an anticipatory breach. There is, thus, no "substantial controversy . . . *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Chelsea Grand LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, 2017 WL 1102699, at *7 (S.D.N.Y. Mar. 23, 2017) (emphasis added) (dismissing plaintiff's declaratory judgment action where plaintiff claimed that defendants "will seek at some unspecified time, for some unspecified reason to initiate an arbitration proceeding"), *aff'd*, 729 F. App'x 33 (2d Cir. 2018). This is not a situation where one party has a current obligation to perform in a fixed manner in the future, *e.g.*, a manufacturer who agrees to provide 100 widgets every month for the next year. Here, there is no fixed future performance because the parties simply do not know whether IRG will be entitled to a fee or the amount of that fee. As a result, any claim for anticipatory breach is premature.

### C. The Requirements for Anticipatory Breach Have Not Been Met

18. Since IRG did not plead an anticipatory breach, the basis for that claim is at best unclear. At one point, IRG suggested that the Debtors "sought to terminate the Contract" on November 22, 2019. (Pl. Reply Br. ¶ 17.) Both parties, however, now agree that this termination

7

has been rescinded and that the Contract is valid and binding. *See* DeVito Declaration ¶ 26 (ECF No. 18) ("Debtors and IRG are currently operating with the understanding that the Contract is valid and binding."); Feb. 11, 2020 Hearing Tr. at 35 (THE COURT: "Neither side has terminated the Agreement.").

19. With respect to the first prong of the anticipatory breach standard, IRG does not allege or point to any "positive and unequivocal" statement by the Debtors that they do not intend to perform under the Contract. To the Contrary, the Debtors have taken the position that the Contract is valid and binding and seek to have the parties perform thereunder. *See 124 Elmwood, LLC v. Elmwood Vill. Charter Sch.*, 28 Misc.3d 1205(A), at *4, 957 N.Y.S.2d 637 (Sup. Ct. Erie Cnty. 2010) (dismissing claim where "plaintiff has not alleged and cannot colorably allege, as it must to in order to claim an anticipatory repudiation, that defendant has finally, definitely, and unequivocally communicated to plaintiff its intent not to perform all of its future contractual obligations" and "far from having disavowed its contractual obligations, defendant continues to perform them").

20. Any expressions of doubt by the Debtors as to whether the Secured Lenders will consent to a fee if one is earned and approved by the Court is insufficient to constitute a clear and unequivocal renunciation of the Contract. "Mere expression of doubt as to the willingness or ability to perform does not constitute a repudiation. There is no repudiation, for example, 'when a party renounces only part of his obligations, qualifies his renunciation, or equivocates.'" *Anchor Sav. Bank*, 1990 WL 34686, at *3 (quoting A. Rosett, *Partial, Qualified, and Equivocal Repudiation of Contract*, 81 Colum. L. Rev. 93, 110 (1981)). "If the refusal to perform is not unconditional and if performance is still possible, there is no anticipatory breach." *Drewitz v. Motorwerks, Inc.*, 2010 WL 1541436, at *3 (Minn. Ct. App. Apr. 20, 2010). Here, of course, the

8

fee could be zero or below $250,000 in which case there would be no dispute. And, even if the fee ends up above $250,000, at most there is uncertainty as to whether the fee will ever be paid because of the Secured Lenders' rights. In short, there has never been a "positive and unequivocal" statement that the Debtors will not or do not intend to perform under the Contract.

21.    The real thrust of any anticipatory breach argument here appears to rest on the second prong of the anticipatory breach standard: an affirmative act that renders the obligor unable to perform his obligations. IRG's contention that the existence of the Secured Lenders liens renders the Debtors unable to perform should be rejected by this Court.

22.    First, the condition that IRG points to here—the existence of the liens and associated consent rights—existed both before the Contract was entered into and today. Nothing has changed; the Debtors have not taken any post-execution affirmative act to breach the Contract—anticipatorily or otherwise. Indeed, Counsel for IRG conceded as much during oral argument when he opened his remarks by stating: "we're here dealing today with a situation which probably could have been avoided if people had paid closer attention at the outset." (Feb. 11, 2020 Hearing Tr. at 13:13-16; *see also id.* at 22:1 ("nobody paid attention at the beginning….")). Had IRG and its experienced bankruptcy counsel "paid closer attention" at the time the Contract was signed, it would have known of the Court's orders approving the liens and known that it needed to be retained under Section 328(a) to protect itself from those liens. Unfortunately, IRG failed to do so. That failure, however, does not give rise to an anticipatory breach by the Debtors.[2]

---

[2] During oral argument, the Court questioned whether there were cases where the existence of a publicly available fact at the time of execution of a contract could then be used by a party to claim an anticipatory breach. (*See* Feb. 11, 2020 Hearing Tr. at 26:15-27:6). The Debtors were unable to find such a case. In those circumstances, however, some parties have unsuccessfully tried to bring fraud claims. Courts have rejected fraud claims where the plaintiff knew or should

9

23. Second, the statements from the Secured Lenders—which merely recite facts that existed at the time the Contract was entered into and offered to settle the dispute—are not the Debtors' statements.[3] IRG is unable to point to *any action by the Debtors* after the Contract was executed rendering the Debtors unable to perform.

24. Third, contracts with a debtor are entered into subject to the provisions of the Bankruptcy Code and the Bankruptcy Court's orders. "Upon commencement of a bankruptcy case by a party to a contract, the implicit provisions of the contract embodying the Code are activated, and the Code may interfere with and override the ordinary exercise of contractual rights." David S. Kupetz, *The Bankruptcy Code Is Part of Every Contract: Minimizing the Impact of Chapter 11 on the Non-Debtor's Bargain*, 54 Bus. Law. 55, 57 (1998). It is well understood that "[l]aws and statutes in existence at the time a contract is executed are considered a part of the contract, as though they were expressly incorporated therein." *2 Tudor City Place Assocs. v. 2 Tudor City Tenants Corp.*, 924 F.2d 1247, 1254 (2d Cir. 1991); *see also Bona v.*

---

have known of the complained-of public information at the time of contracting. "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984). "'Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.'" *Belin v. Weissler*, 1998 WL 391114, at *6 (S.D.N.Y. July 14, 1998) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997)). If a party is held to being aware of public information at the time of contracting such that a fraud claim is unavailable, it seems, *a fortiori*, those same facts cannot form the basis for an anticipatory breach.

[3] Even assuming *arguendo* that the statements by the Secured Lenders could be attributed to the Debtors, "[a] willingness to negotiate an offer of performance at variance with the terms of the agreement demonstrates the offering party's intention to abide by the contract and does not result in an anticipatory breach." *Pac. Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.*, 411 F.2d 889, 895 (9th Cir. 1969). Here, the Secured Lenders have said they are prepared to negotiate with IRG over acceptable terms. As such, the Secured Lenders conduct does not rise to the level of an anticipatory breach.

10

*Barasch*, 2003 WL 21222531, at *6 (S.D.N.Y. May 27, 2003) ("Relevant statutes and regulations are incorporated into each contract as implied terms."). Accordingly, when IRG agreed to be an OCP for the Debtors on September 7, 2019, the Contract became subject to the Orders issued by the Court, including the Interim Cash Collateral Order, the Final DIP Order, the Amended Cash Collateral Order, and the Global Settlement Agreement Order. Whether or not IRG and its experienced bankruptcy counsel took the time to review the Court's Orders is simply not relevant. A party contracting with a company in bankruptcy cannot put its head in the sand and ignore a court's orders.

25. The assertion that IRG was unaware that the Secured Lenders had liens on the Debtors' cash collateral is also belied by the record.[4] The Complaint concedes that IRG was on notice of the Secured Lenders (which by definition have liens on the Company's property). In its Complaint, IRG admits that it reached out to representatives of certain holders of the Debtors' secured debt. (*See* Compl. ¶¶ 17, 20-21 & Ex. A.) Given that IRG, a sophisticated bankruptcy professional represented by experienced bankruptcy counsel, was able to determine and contact the Secured Lenders, it could have and should have reviewed the Interim Cash Collateral Order, the Final DIP Order, the Amended Cash Collateral Order, and the Global Settlement Agreement Order—basic documents in a bankruptcy of which any sophisticated bankruptcy professional and its counsel should be aware when contracting with a debtor. IRG's failure to do so cannot be a basis to claim that the Debtors are now anticipatorily breaching the Contract. IRG knew or should have known of these essential facts and circumstances and accepted the Debtors' situation

---

[4] *See* Feb. 11, 2020 Hearing Tr. at 17:6-9 ("We did not . . . know about the lien, nor did we know about the possibility that we should have been retained under [Section 328] rather than an ordinary course professional.").

11

first when it entered into the Contract with the Debtors and also when it became an OCP in the Debtors' bankruptcy.

26. The principle that a contracting party is bound by the facts it knows or should know at the time of signing has been applied in analogous situations. For example, in *Brunswick Corp. v. Waxman*, the court applied this principle to prevent a party from piercing the corporate veil where it knew or should have known that the counterparty was a no-asset shell company created for the precise purpose of avoiding liability for the parent organization. 459 F. Supp. 1222, 1232 (E.D.N.Y. 1978), *aff'd*, 599 F.2d 34 (2d Cir. 1979). There, a no-asset corporation was formed to lease equipment from Brunswick for five bowling alleys. *Id.* at 1225. The no-asset corporation defaulted on its payments under the leases and Brunswick sued seeking to pierce the corporate veil. *Id.* at 1226-27. The District Court found that Brunswick knew it was dealing with a shell company precisely for the purpose of shielding the parents from liability and therefore refused to pierce the corporate veil. *Id.* at 1232. The Second Circuit affirmed, holding that:

> The district judge who tried the case found that Brunswick had knowingly entered into the conditional sales contracts involved in this litigation with a no-asset corporation which was created for the sole purpose of taking title to the equipment which Brunswick sold. Brunswick knew or should be charged with the knowledge that the Waxmans wished to avoid personal liability and that the sole obligor on the sales contract was to be the corporate dummy created for that purpose.

*Brunswick Corp. v. Waxman*, 599 F.2d 34, 36 (2d Cir. 1979); *see also Favour Mind Ltd. v. Pacific Shores, Inc.*, 2004 WL 97649, at *7 (S.D.N.Y. Jan. 20, 2004) ("Where a party is aware of the risks of dealing with a corporation, that party has assumed the risk of such dealings."). The result should be the same here. IRG knew or should have known that it was contracting with the Debtors whose Secured Lenders had publicly-disclosed liens on any tax recoveries. IRG cannot now ignore those facts and claim an anticipatory breach.

27. IRG also knew that an application needed to be and was filed with the Bankruptcy Court as part of its retention. Because the Debtors were in bankruptcy, IRG was subject not only to the OCP Order and the procedures embodied therein, but also to pre-existing liens, security interests, and cash collateral orders that have been publicly available since 2015. IRG, which has been retained in other bankruptcies to provide similar services, could have insisted that it be retained under Section 328(a) of the Bankruptcy Code, as in other bankruptcies,[5] which would have potentially obviated the position in which IRG finds itself. Instead, IRG knowingly proceeded as a third-party OCP under this Court's OCP Order, which authorized the Debtors to employ and compensate certain professionals without additional applications, so long as the OCP is not paid more than $250,000 for the entire duration of the chapter 11 case.

28. It is IRG that now seeks to alter the Contract by having this Court treat the Contract as if it were approved by the Court under Section 328(a)—which would have obviated this dispute. Having failed to be retained under Section 328(a), it cannot now get the benefits that a retention pursuant to 328(a) would have provided.

---

[5] *See* Order Authorizing the Employment of Investment Recovery Group as Tax Advisor for the Debtors at 2, *In re hhgregg, Inc.*, No. 17-01302-JJG-11 (Bankr. S. D. Ind., Nov 13, 2018), ECF No. 2704 ("The Debtors are authorized to employ IRG as tax advisor *nunc pro tunc* to the date of filing of the Application with compensation to be paid pursuant to section 328(a) as detailed in the Application . . . "); Order (I) Approving a Proposed Finder's Fee Agreement with, and Retention of, Investment Recovery Group, (II) Approving the Retention of Donna M. Gottschalk, CPA, and (III) Waiving the Information- Keeping Requirements of Local Bankruptcy Rule 2016-2 at 2, *In re Cal Dive International, Inc.*, No. 15-10458 (CSS) (Bankr. D. Del., Oct. 14, 2016), ECF No. 1405 ("The Debtors are authorized to pay IRG its contingency fee of 60% of cash collections received by the Debtors from uncovered and pursued tax rebates . . . without further order of this Court or the filing of interim fee applications, and IRG shall not be required to file separate fee applications for the allowance of these fees."); Order at 2-3, *In re Linens Holding Co.*, No. 08-10832 (Bankr. D. Del., Nov. 9, 2012), ECF No. 7408 (retaining an IRG affiliate, Santa Barbara Financial, Inc.) ("ORDERED that pursuant to 11 U.S.C. §§ 327(a) and 328(a), the Trustee is authorized to retain BFC upon the terms and conditions and for the purposes set forth in the motion and the Agreement . . . "), which are attached as Exhibits 1 through 3 to the Declaration of Richard W. Slack (ECF No. 17).

29. Moreover, a sophisticated party that explicitly chooses to be retained as an ordinary course professional under Section 327(a) instead of Section 328(a) is bound to that choice. Importantly, IRG recognized that its Contract is subject to this Court's orders and has conceded that it is required to seek court approval for any fee in excess of $250,000. (*See* Feb. 11, 2020 Hearing Tr. at 17:13-15 ("we're . . . perfectly willing to file another application); *id.* at 20:9-12 (THE COURT: "You just said . . . that IRG was per[fec]tly willing to live with the requirements of the ordinary course professionals order and/or 330 . . . .").) The Contract, however, does not explicitly provide that the 75% contingency fee is subject to Court approval. Yet, IRG now concedes that it could be paid something less than a 75% contingency fee if the Court so determines. IRG does *not* contend that the parties' adherence to the Court's OCP Order, including not paying IRG any fee over $250,000 until and unless the Court approves it as reasonable, constitutes an anticipatory breach by the Debtors. This is precisely because IRG recognizes that its Contract with the Debtors is subject to the Court's orders. The Court recognized precisely this point during argument when it stated: "You're saying that it would be a breach of the Agreement not to pay the 75 percent even though, under the Code, the client only pays under a fee order. It says how it's to be paid after the application is granted." Feb. 11, 2020 Hearing Tr. at 21:20-24.

30. If the Court's reduction of IRG's fee through the Section 330 compensation process is not a breach of the Contract, then adherence by the Debtors to the Court's Interim Cash Collateral Order, the Final DIP Order, the Amended Cash Collateral Order, and the Global

14

Settlement Agreement Order is likewise not an anticipatory breach. IRG cannot pick and choose to which Bankruptcy Court orders the Debtors and their contracting parties must adhere.[6]

## CONCLUSION

31. For these reasons and those explained in the Debtors' Motion, this Court should deny IRG's motion for a preliminary injunction and dismiss the Complaint in its entirety.

Dated: New York, New York
April 21, 2020

        /s/ *Richard W. Slack*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Sunny Singh

*Attorneys for Debtors and
Debtors in Possession*

---

[6] A claim by IRG that the Debtors' administrative insolvency suffices as anticipatory breach also fails. In the same way that "[a] bankruptcy filing is not of itself an anticipatory repudiation by the debtor of an executory contract," *In re Econ. Lodging Sys., Inc.*, 226 B.R. 840, 846 (Bankr. N.D. Ohio 1998), *aff'd*, 234 B.R. 691 (B.A.P. 6th Cir. 1999), having liens on cash collateral that were public and known at the time IRG entered into the Contract cannot suffice as an anticipatory breach. The Debtors were administratively insolvent when IRG signed the Contract and today.

15